UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SALVADOR DEALBA SANCHEZ,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No.:  16-cv-02112-JM-MDD

**REPORT AND RECOMMENDATION**

Plaintiff Salvador D. Sanchez ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Title II of the Social Security Act and for supplemental security income under Title XVI.

For the reasons expressed herein, the Court recommends that Plaintiff's Complaint be dismissed.

//

//

//

1

# I. **BACKGROUND**

Plaintiff alleges disability beginning on January 1, 2011. (A.R. 15).[1] Plaintiff's date of birth is October 18, 1966; he was 44 years old on the alleged disability onset date, which categorizes him as a younger individual for these purposes. 20 C.F.R. §§ 404.1563, 416.963; (A.R. 24, 535).

## A. **Procedural History**

On January 23, 2012, Plaintiff filed an application for disability and disability insurance benefits. (A.R. 15). Plaintiff also filed an application for supplemental security income on February 17, 2012. (*Id.*). Plaintiff alleged disability beginning January 1, 2011, in both applications. Plaintiff's applications first were denied on June 8, 2012, and again upon reconsideration on February 6, 13. (*Id.*). On February 3, 2014, Plaintiff appeared and testified at a hearing in San Bernardino, California; and at a supplemental hearing on August 29, 2014, in San Diego, California. (*Id.*).

On October 7, 2014, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 26). Plaintiff appealed, and on April 11, 2016, the Appeals Council declined to review the ALJ's decision. (A.R. 1). Consequently, the ALJ's decision became the final decision of the Commissioner. (*Id.*).

On August 20, 2016, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision. (ECF No. 1). On March 23, 2017, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 11, 12). Plaintiff's motion for summary judgment was due May 26, 2017. The Court extended the deadline to June 30, 2017, granting a

---

[1] "A.R." refers to the Administrative Record filed on March 23, 2017, and located at ECF No. 16.

joint motion of the parties. (ECF Nos. 14, 17). No motion was filed and on July 3, 2017, counsel for Plaintiff filed a motion to withdraw as attorney of record. (ECF No. 18). The Court scheduled a telephonic status conference for July 7, 2017. (ECF No. 19). Counsel for Plaintiff and counsel for Defendant appeared. The Court continued the conference to July 13, 2017, to allow Plaintiff to participate. (ECF No. 21). On July 13, 2017, neither Plaintiff nor counsel for Plaintiff appeared. (ECF No. 24). The Court set a hearing for July 26, 2017, requiring Plaintiff and his counsel personally to appear. (ECF No. 25).

Plaintiff and his counsel personally appeared on that date (counsel for Defendant was permitted to and did attend telephonically). The Court discussed with Plaintiff his options to obtain new counsel or to represent himself if his current counsel was permitted to withdraw. Plaintiff stated that he understood his options and no longer desired his current counsel of record to represent him. The Court advised Plaintiff that it would recommend to the district judge that his counsel be granted leave to withdraw and advised Plaintiff that his motion for summary judgment would be due on September 8, 2017. The report and recommendation to the district judge and new Scheduling Order were filed on August 7, 2017. (ECF Nos. 28, 29).[2]

Plaintiff failed to file a motion for summary judgment as required on September 8, 2017. On October 12, 2017, the Court issued an order to show cause why this case should not be dismissed for failure to prosecute. (ECF No. 31). The hearing was held on October 25, 2017. Plaintiff appeared and

---

[2] On October 12, 2017, the district judge adopted the report and recommendation and Plaintiff's counsel was terminated from the case. (ECF No. 30).

16-cv-02112-JM-MDD

stated that he could not find new counsel but was not willing to withdraw his Complaint. (ECF No. 32). Accordingly, the Court advised Plaintiff that the Court would proceed with its report and recommendation by addressing the allegations presented in the Complaint. (*Id.*)

## II. DISCUSSION

### A. Legal Standard

To qualify for disability insurance benefits, a Plaintiff must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "can be expected to result in death" or "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disabling impairment must be so severe that, considering age, education, and work experience, Plaintiff cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner makes this assessment through a process of up to five steps. First, the Plaintiff must not be engaged in substantial, gainful activity. 20 C.F.R. § 416.920(b). Second, Plaintiff must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of Plaintiff's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If Plaintiff's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded. (*Id.*). If Plaintiff's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers Plaintiff's residual functional capacity.

At the fourth step, Plaintiff's relevant work history is considered with Plaintiff's residual functional capacity. If Plaintiff can perform Plaintiff's

past relevant work, benefits are denied. 20 C.F.R. § 416.920(e). At the fifth step, if Plaintiff is found unable to perform Plaintiff's past relevant work, the issue is whether Plaintiff can perform any other work that exists in the national economy, considering Plaintiff's age, education, work experience, and residual functional capacity. If Plaintiff cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f).

Sections 405(g) and 1383(c) (3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c) (3). The scope of judicial review is limited and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*Id.*). (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly

develop the record in order to make an informed decision on a Plaintiff's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself [or herself] about the facts relevant to his decision," even if Plaintiff is represented by counsel. (*Id.*). (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. (*Id.*).

**B.** **The ALJ's Decision**

The ALJ noted Plaintiff was 44 years old on the alleged disability onset date, which categorizes him as a younger individual.[3] *See* 20 C.F.R. § 404.1563, 416.963; (A.R. 24).

The ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine without evidence of radiculopathy or stenosis and asthma. (20 C.F.R. 404.1520 (c) and 16.920

---

[3] Plaintiff's age on the date of the filing of this case was 49 years 10 months. While this case was pending, Plaintiff turned 50 years old moving him from the "younger individual" category into the "closely approaching advanced age" category. Pursuant to Appendix 2 to Subpart P of Part 404 Medical Vocational Guidelines 20 C.F.R. Ch. III. Applying the record evidence and the ALJ's findings in this case, the change in age category did not affect Plaintiff's non-disability determination. *See* 20 CFR Ch. 111, Pt. 404, Subpart P. App. 2 (4-1-13 Edition).

16-cv-02112-JM-MDD

(c)). (A.R. 17). The ALJ determined Plaintiff did not have an impairment or combination of impairments meeting or medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (A.R. 19). Specifically, the ALJ found that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of impairments." (*Id.*). The ALJ further determined Plaintiff's "medically determinable mental impairment of anxiety and depressive disorder does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and is therefore nonsevere." (A.R. 17).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to:

> "lift/carry 20 pounds occasionally and 10 pounds frequently; occasionally stoop and kneel; unable to crawl; no work around unprotected heights; no exposure to vibrations; occasionally work around moving machinery; occasionally operate foot pedal; no climbing ladder or ropes; occasionally climb stairs and ramps; no balancing; stand or walk four hours out of an eight hour workday, no more than 30 minutes at a time; sit for six hours out of an eight hour workday, no more than 30 minutes at a time, and at the completion of sitting, can rise and continue to work at the workstation while standing or can walk away and remain standing; and avoid concentrated exposure to fumes, extreme temperatures." (A.R. 23).

Relying on the record evidence and on the testimony of vocational expert (VE) Gloria J. Lasoff, the ALJ found Plaintiff is unable to perform his past relevant work as a banquet server. (A.R. 24). The ALJ noted however, that jobs exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 77). In making this determination, the ALJ considered

16-cv-02112-JM-MDD

Plaintiff's age, education, work experience, and RFC. (A.R. 25). Accordingly, the ALJ found Plaintiff was not disabled from January 1, 2011, to the date of the ALJ's decision, October 7, 2014. (A.R. 15).

In determining that Plaintiff is not disabled, the ALJ noted the following to be of particular relevance:

### 1. Plaintiff's Testimony

Plaintiff alleged he had trouble with nearly all physical abilities. (A.R. 291-300). Plaintiff also alleges he lies down most of the day and the pain medication leaves him groggy, sleepy, and depressed. (A.R. 293). He indicated he could only walk 10 feet before needing to stop and rest. (A.R. 298). Plaintiff acknowledged he was able to watch television and he took an active part in church. (A.R. 293, 297).

At the hearing, Plaintiff testified he was still in pain years and the pain has gotten worse. (A.R. 76). Plaintiff testified he tried to go back to work five or seven times as a banquet server but was unable to walk or lift anything. (A.R. 72). Plaintiff further testified he could only drive his car in emergency situations. (A.R. 58). For example, Plaintiff testified he drove "three or four months ago" to pick his son up from school when his son was sick. (*Id.*).

The ALJ found Plaintiff's credibility highly suspect based on the discrepancy between his subjective complaints and the objective medical evidence. (A.R. 20). In multiple instances it appeared Plaintiff exaggerated his symptoms during his testimony and during his consultative exams. (A.R. 20, 456).

### 2. Plaintiff's 2011-2014 Medical Records

During an exam at the Lomita Family Medical Group on January 18, 2011, Plaintiff complained of lower back pain with pain radiating to both legs. (A.R. 342). In April of 2011, an MRI of the Plaintiff's lumbar spine

showed an annular tear. (A.R. 22, 542). An examination also found that Plaintiff's right leg was shorter than his left and he was prescribed a heel lift. (A.R. 22).

On May 24, 2012, Dr. Robert MacArthur, M.D., a Board certified orthopaedist conducted a complete consultative evaluation of Plaintiff and noted Plaintiff exaggerated his symptoms and was not a credible historian. (A.R. 21, 456, 457). During the physical examination, Dr. MacArthur noted the Plaintiff was able to get on and off the examination table without assistance. (A.R. 21, 458).

On June 25, 2012, the Plaintiff alleged his condition was not improving and he could not imagine working again, but he declined a pain shot. (A.R. 21, 530-531). The examining physician also made a note that his nurse practitioner observed Plaintiff in the lobby prior to his appointment and that he appeared to be without pain. (A.R. 21). On November 5, 2012, it was noted during medical appointments that Plaintiff walked into the exam room without a limp or gait abnormality. (*Id.*). Plaintiff also appeared to be able to sit on the examination table with ease. (A.R. 21, 471-472). Similarly, Plaintiff utilized his cane only part way, but then left the cane to walk and have his vitals taken. (A.R. 472).

On September 23, 2012, Plaintiff told his medical provider that he was not interested in surgery to help fix his lower back pain. (A.R. 505). Despite his complaints of back pain, Plaintiff again declined a pain shot. (A.R. 21, 514).

In August 23, 2011, examining physician, Dr. Hardy, M.D., prepared a report following an examination of Plaintiff. Specifically, upon review of Plaintiff's MRI, Dr. Hardy confirmed Plaintiff had mild degenerative disc disease with annular tear. (AR 367). Dr. Hardy further noted "[i]n the lower

extremities, [Plaintiff] has good strength and tone with no specific findings, although he has complained of some numbness and radicular type of pain." (AR 368). In January 2013, Dr. Hardy, completed a Medical Source Statement-Physical form declaring his opinion that Plaintiff was completely disabled. (AR 487). This form is a checklist with little space to present medical findings supporting the assessment. Dr. Hardy's statement that Plaintiff's "known back disc phenomenon at L4-5 level with annular tear left leg weakness" was the only medical evidence cited by Dr. Hardy to support his opinion that Plaintiff was completely disabled. (*Id.*). The ALJ gave little weight to Dr. Hardy's assessment that Plaintiff was unable to work or was limited to less than sedentary work. (A.R. 24, 364, 487-488). The ALJ opined that Dr. Hardy's statements appeared to be an accommodation to Plaintiff and based only on Plaintiff's subjective complaints of pain. (A.R. 24). The ALJ found the evidence of these statements had no probative value due to the lack of any objective medical evidence supporting such statements. (*Id.*).

On May 29, 2014, during a complete consultative evaluation by Dr. Thomas Sabourin, M.D., board certified in orthopedic surgery, Plaintiff refused to move his neck or back and refused most other testing. (A.R. 22, 538-541). Based on the examination, Dr. Sabourin diagnosed Plaintiff with an annular tear L4-5 by history, and generalized pain syndrome involving the entire back and lower extremities. (A.R. 22, 542). Dr. Sabourin found Plaintiff's complaints were in significant disproportion to the determinable condition. (A.R. 22, 543). Dr. Sabourin opined Plaintiff had the following limitations: lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and walk six hours out of an eight-hour workday; frequently climb, stoop, kneel, and crouch; and no need for a walker to ambulate. (*Id.*).

16-cv-02112-JM-MDD

In May of 2014, an impartial medical examiner, Dr. Robert MacArthur, M.D., a Board certified orthopedist, performed a subsequent complete consultative examination, which revealed Plaintiff provided poor effect and was uncooperative. (A.R. 22, 538-553). Dr. MacArthur found Plaintiff had no medically determinable impairment. (*Id.*). At the disability hearing on August 24, 2014, Dr. Arthur Lober, M.D., a Board certified orthopedist, testified as a medical expert. (A.R. 22). Dr. Lober testified that he had reviewed all the medical exhibits of record and although Plaintiff's lumber spinal condition is a severe impairment, it does not bar him from performing substantial gainful activity. (AR 65, 66).

### 3. State Agency Medical Consultants

The ALJ gave significant weight to the consultative examiner, Dr. Sabourin, and the opinions of the State agency medical consultants who found Plaintiff's mental impairments non-severe. (A.R. 18, 489-498). The State agency medical consultants also opined Plaintiff is limited to medium work. (A.R. 23, 81-90). They found Plaintiff sits and stands with normal posture and was able to take off his clothes and put on his gown during his examination. (A.R. 540). Plaintiff refused to toe and heel walk or move his neck, however, stating it would hurt. (*Id.*). Plaintiff also refused to move his back, sit on the examination table, or lie down on the table, stating he could not do so. (A.R. 541). The examination revealed there was no deformity, scar, tenderness, spasm, swelling, or warmth in Plaintiff's neck. (*Id.*).

### 4. Dr. Gregory Nicholson, Consultative Examiner

The ALJ gave great weight to consultative examiner Gregory Nicholson, M.D., a Board certified psychiatrist, who found Plaintiff's mental impairments non-severe. (A.R. 18, 489-498). The ALJ found Dr. Nicholson's opinions consistent with the objective medical evidence. (A.R. 18, 03-116/117-

130).  Plaintiff reported he had no difficulty with dressing, bathing, or hygiene and he was able to handle financial matters and go out alone.  (A.R. 18, 490-492).  Plaintiff also stated he was able to handle bills and cash appropriately.  (A.R. 18, 492).  Plaintiff's chief complaint was anxiety.  (A.R. 18, 490).

Based on the examination, Dr. Nicholson diagnosed Plaintiff with anxiety disorder and depressive disorder.  (A.R. 18, 338-339).  Dr. Nicholson opined Plaintiff had mild mental restrictions, at best.  (A.R. 18, 339).

### 5.  Dr. Robert MacArthur, Consultative Examiner

The ALJ gave some weight to consultative examiner Dr. Robert MacArthur, M.D., a board certified orthopedist, who opined that Plaintiff had no limitations.  (A.R. 23, 455-460).  Dr. MacArthur also opined that Plaintiff did not appear to be in acute or chronic distress.  (A.R.458). Dr. MacArthur noted there was a gross amplification of all symptoms with minimal effort and minimum cooperation.  (*Id.*).  For example, Dr. MacArthur noted that Plaintiff stated he could not walk without a front-wheel walker but there is no evidence of atrophy of either lower extremity or any significant medically determinable impairment.  (*Id.*).  Dr. MacArthur determined there was no evidence of swelling, effusion, erythema, warmth, or deformity of the hips, knees, and ankles.  (A.R. 459).  Lastly, Dr. MacArthur found all Plaintiff's joint ranges of motion were within normal limits.  (*Id.*).

## C.  **Issues on Appeal**

This matter has been submitted on the pleadings and the transcript of record. Because neither party filed a motion for summary judgment, the Court has conducted an independent review of the record.

Plaintiff raised three general assertions of error by the ALJ in his Complaint: 1) The record does not present any substantial medical or

vocation evidence to "support the legal conclusion that plaintiff is not disabled…." (ECF No. 1 at 2); 2) The record does not present any substantial evidence that Plaintiff can perform "any substantial gainful activity." (*Id.* at 3); 3) The record only supports that Plaintiff "is disabled and has been continuously disabled . . . at all times relevant to [P]laintiff's application." (*Id.* at 3).

As noted herein, an ALJ follows a five-step process of evaluating a claim for disability benefits. This Court has conducted a step-by-step review of the ALJ's decision.

**Step One-Whether the Plaintiff was currently engaged in substantial gainful activity.**

The ALJ found that Plaintiff did not engage in substantial gainful activity since January 1, 2011, which is Plaintiff's alleged onset date and the date. (A.R. 17, 35-37). Plaintiff's application date was February 17, 2012.

**Step Two-Whether Plaintiff has a severe medically determinable impairment or combination of impairments.**

As noted by the ALJ, Plaintiff has the severe impairment of asthma[4]. The ALJ also found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine without evidence of radioculpathy or stenosis. (A.R. 17). The ALJ found Plaintiff's degenerative disc disease severe, in part, because it limited his ability to carry more than 20 pounds occasionally and 10 pounds frequently and use a cane to stand/walk for a

---

[4] Plaintiff did claim a severe asthma impairment. The ALJ did not dispute that Plaintiff had the severe impairment of asthma. (A.R.17). Although the ALJ made minimal reference to Plaintiff's asthma, he did account for it in Plaintiff's RFC. Specifically, the ALJ stated Plaintiff "is precluded from concentrated exposure to fumes, or extreme cold or heat; no more air pollutants than found in an air conditioned environment." (AR at19).

portion of a full workday. (A.R. 19). For example, a physical exam at the Lomita Family Medical Group in February 2011 showed tenderness in the spine. (A.R. 21). An MRI from April 2011 showed mild degenerative disc disease with a central annular tear at L4-5 (*Id.*). An MRI from July 2012 showed mild degenerative changes predominantly at L4-5 (*Id.*). Dr. Sabourin, M.D., a consultative examiner, diagnosed Plaintiff with an annular tear at L4-5 and generalized pain syndrome of the entire back and lower extremities "etiology undetermined." (A.R. at 22).

These records were sufficient at step two for the ALJ to determine that Plaintiff's claimed physical impairment was severe.

Conversely, the ALJ found that Plaintiff's alleged mental impairment was not severe. (AR at 13-15). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) *citing Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ must demonstrate that there was substantial evidence to determine that the medical evidence of record clearly established that Plaintiff did not have a severe impairment. *Webb v. Barnhart*, 433 F.3d at 687.

Here, the ALJ found that Plaintiff's medically determinable non-extertional impairment was not severe and did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (A.R. 17). Specifically, the ALJ cited to the findings of Dr. Gregory Nicholson, M.D., a board certified psychiatrist, who conducted a consultative exam in January 2013. At that time, Plaintiff's main complaint was anxiety. (A.R. 490). Overall, Dr. Nicholson opined that "from a psychiatric standpoint, the claimant's condition is expected to improve in the next twelve months with

active treatment." Dr. Nicholson's functional analysis was as follows:

> 1. The claimant is able to understand, remember, and carry out simple one or two-step job instructions.
> 2. The claimant is able to do detailed and complex instructions.
> 3. The claimant's ability to relate and interact with coworkers and the public is mildly limited.
> 4. The claimant's ability to maintain concentration and attention, persistence and pace is mildly limited.
> 5. The claimant's ability to accept instructions from supervisors is not limited.
> 6. The claimant's ability to maintain regular attendance in the work place and perform work activities on a consistent basis is not limited.
> 7. The claimant's ability to perform work activities without special or additional supervision is mildly limited.

(AR 494).

In addition to Dr. Nicholson's report, the ALJ must follow a special process at each level of administrative review when evaluating the severity of mental impairments. See 20 C.F.R. §§ 404.1520a(a). "In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional restrictions are present ("paragraph B" criteria). 20 C.F.R. § 404.1520a." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). In some cases, a listing for a specific mental impairment may have a third set of criteria – paragraph C- which are alternative impairment related functional limitations. *See* 20 C.F.R. 1520(a); 20 C.F.R. Pt. 404, Supt. P App 1 § 12.00 et seq. (2013).

In this case, the ALJ determined that Plaintiff did not exhibit any combination of at least two of the paragraph B criteria, to wit: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration,

persistence or pace; or 4) repeated episodes of decompensation, each of extended duration. (A.R. 14). Nor did the ALJ find paragraph C criteria applicable to Plaintiff's alleged mental disability, i.e., there is no evidence that there is more than a minimal limitation in his ability to do basic work activities. See 20 C.F.R. § 404.1520a(d)(1). (*Id.*)

A review of the record also shows Plaintiff never asserted that he stopped working because of his alleged mental problems. Based on the foregoing, the ALJ satisfied his obligation of citing to substantial evidence in the record to support his determination that Plaintiff's alleged mental impairment was non-severe.

**Step Three-Whether Plaintiff's impairment meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416920(d), 416.925, and 416.926.**

The ALJ found that Plaintiff's degenerative disc disease did not meet or equal an impairment or combination of impairments listed in the regulations. As noted by the ALJ, specific evidence in the record contradicted Plaintiff's alleged intensity and functionally limiting effects of pain and other symptoms. (A.R. 19).

For example, Dr. Robert McArthur, M.D., a board certified orthopedist, conducted a complete consultative evaluation of Plaintiff. Dr. McArthur noted, "Plaintiff's chief complaint was low back pain radiating to bilateral low extremeties with numbness of the feet nondermatomal." (A.R. 21). Dr. McArthur also noted that Plaintiff exaggerated his condition and was not a credible historian. He noted Plaintiff "was unable to walk without a walker when he had no evidence of atrophy or either lower extremity or any significant medically determinable impairment." Dr. McArthur found normal

muscle strength in all major muscle groups of the upper and lower extremities with intact sensation and generally normal cervical and thoracolumbar spine. (*Id*.). Dr. McArthur's final conclusion was that Plaintiff had no medically determinable impairment and had no limitations. (*Id*.)

There is other substantial evidence in the record that Plaintiff is not disabled. Specifically, physical examination in 2011 demonstrated mild degenerative disc disease L4-5 with no central spinal stenosis or evidence of nerve impingement. A central annular tear L4-L5 was noted. (A.R. 370). An MRI in 2012 showed mild degenerative changes predominantly at L4-L5. (A.R. 21). Additionally, the record from a physical examination in November 2012, noted Plaintiff "sat on the examination table with ease" and "walked into the examination room without a limp or gait abnormality." (A.R. 472). The progress notes also reported that Plaintiff walked into the room with a cane but "left it a ways off to sit down for having his vitals taken." (*Id*.).

In 2014, Plaintiff underwent a second complete consultative evaluation by Dr. Thomas Sabourin, M.D., board certified in orthopedic surgery. (A.R. 538). Plaintiff's chief complaint was "pain in the lower back radiating to the upper back and both legs." (A.R. 539). Plaintiff used a walker at the examination and claimed to have used it for 3-4 years. Dr. Sabourin made the following report:

> The claimant sits and stands with normal posture. There is no evidence of any tilt or list, and the claimant sits comfortably during the examination. He [was] able to take off his clothes and put on his gown, but leaned over against his walker on his chair with his elbow on the desk next to it with his head down. He would move about very minimally. When he stood, he stood using his walker leaning heavily with his arms against his walker almost as doing a pushup and pushing with his feet at angle of about 20

degrees angulating forward not bending the spine.  He refused to toe and heel walk.  He refused to move is his neck stating it would hurt. He refused to move his back stating it would hurt. His back has no gross deformity. . . . He would not sit on the exam table or lie down on the exam table stating he could not do so.

(A.R. 540-541).

Dr. Sabourin noted that Plaintiff's range of motion of his elbows, wrists, hands and fingers, hips, knees, ankles and feet is grossly normal and painless.  (A.R. 541-542).  Dr. Sabourin stated "based on the objective examination, I could find no reason why he needed a walker to ambulate." (A.R. 543).  Dr. Sabourin opined that Plaintiff's complaints were in significant disproportion to the determinable condition.  "His lack of cooperation in the examination appear to be voluntary and not due to painful situation." (*Id.*).

Dr. Arthur Lorber, M.D., a board certified orthopedist, testified at Plaintiff's administrative hearing as the medical expert.  (A.R. 53-79).  Dr. Lorber testified he had reviewed the "all the medical exhibits of record" and that Plaintiff's impairments "neither singly nor in combination met or equaled a medical listing."  (A.R. 23).  Dr. Lorber further testified he would assign Plaintiff the following residual functional capacity:

[L]ift/carry 20 pounds occasionally and 10 pounds frequently; he may occasionally stoop, crouch, kneel; he should not craw; should now (sic) work at unprotected heights; he should avoid exposure to concentrated vibrations; he may occasionally work around moving machinery;  he may occasionally operate foot pedals with either foot; he should not climb ladders, scaffolds, or ropes, but he may at least occasionally [inaudible] ramps – in fact, maybe even a little more than occasionally. . . . He should not balance; he may stand and/or walk for a total of four hours per day, not more than 30 minutes at a time. He may sit for a total of six hours per day, not more than 30 minutes at a time.  At the completion of sitting for a

period of thirty minutes, the claimant may arise and continue to work at the workstation in a standing position, or, alternatively, he may walk away from the work station and continue to work at a standing or walking position elsewhere. The claimant does not require any other exertional, environmental, positional, or manipulative restrictions, except for he must avoid exposure to concentrated fumes, extreme cold, and extreme heat because the claimant has a diagnosis of asthma and is treated for his asthma with inhalers and with prednisone. . . . as far as I can tell.

(A.R. 65-67).

Dr. Lorber further testified that Plaintiff does not meet or equal listing 1.04A or C "regarding his lumbar spinal condition" nor does his condition meet or equal listing 3.03. (A.R. 65, 66). Ultimately, Dr. Lorber opined that Plaintiff "does have a severe impairment as defined by the Social Security Administration; however that impairment does not rise to a listing level. . ." (A.R. 65). Based on this record, the ALJ was required to proceed to the fourth step in the evaluation process.

**Step Four-Whether the Plaintiff has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)).**

At step four, the ALJ found Plaintiff not disabled and had the following Residual Functional Capacity:

[C]laimant can lift or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for two hours out of an eight hour workday for 30 minutes at a time using a cane; sit for six hours out of an eight hour workday for 30 minutes at a time, and after 30 minutes can stand and work while standing or walking; occasionally stoop, crouch, and kneel; occasionally work around machinery; occasionally operate foot pedals; and occasionally climb stairs and ramps. The claimant is precluded from concentrated exposure to fumes, or extreme cold or heat; no more air pollutants than found in an air conditioned environment; crawling; balancing; unprotected heights, climbing ropes and ladders; and exposure to

16-cv-02112-JM-MDD

concentrated vibration. The claimant would miss work once a month.

(A.R. 19).

The ALJ found that Plaintiff's past relevant work as a banquet server, is light exertional work as defined in the Dictionary of Occupational Titles, DICOT 311.477-026 (January 1, 2016). Because the ALJ, with assistance from the vocational expert, determined that Plaintiff could not perform his past relevant work, the ALJ was required to proceed to step five of the sequential analysis.

**Step Five-Whether the Plaintiff is able to perform any other work considering is residual functional capacity.**

At step five, the ALJ must determine whether Plaintiff can perform any other vocation in the national economy. During the administrative hearing, the ALJ took testimony from the VE regarding what other work was available to Plaintiff considering the claimant's age, education, work experience, and residual functional capacity.[5] The VE testified that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (A.R. 25). The VE noted Plaintiff would be able to perform the requirements of Sealer, DOT 559.687-014, which is sedentary, unskilled with 400,000 such positions in the national economy or Lens sorter, DOT 713.687-026 with 200,000 such positions in the national economy. (A.R. 25).

Based on this evidence of record, the Court finds the ALJ satisfactorily applied the five-step sequential evaluation to this case and properly

---

[5] "Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration." (A.R. 17).

16-cv-02112-JM-MDD

concluded at step five that Plaintiff can make a successful transition to other jobs available in the national economy.

As the factfinder the ALJ's decision must be affirmed if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Commissioner Social Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009). "If evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748,749 (9th Cir. 1995). The ALJ's findings of fact and conclusions of law reflect his consideration of the total medical evidence of record.

The Court's review revealed no ambiguity or error indicating that the record was not sufficiently developed. Accordingly, the Court finds the ALJ's findings of fact and conclusions of law, are supported by substantial evidence and free of legal error.

### III. CONCLUSION

The Court **RECOMMENDS** that the final decision denying Plaintiff's application for social security benefits be **AFFIRMED** and Plaintiff's Complaint be **DISMISSED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than **February 20, 2018**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 27,**

16-cv-02112-JM-MDD

**2018**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   February 6, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge